MARK L. BLOCK (SBN 115457)
mblock@wargofrench.com
KRISTAPOR VARTANIAN (SBN 275378)
kvartanian@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
Telephone:  (310) 853-6300
Facsimile:   (310) 853-6333

Attorneys for Plaintiffs
Brookwood Funding, LLC, Brookwood Loans of California, LLC,
and Instant Cash Loans on Car Titles, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROOKWOOD FUNDING, LLC, BROOKWOOD LOANS OF CALIFORNIA, LLC, & INSTANT CASH LOANS ON CAR TITLES, INC.,<br><br>　　　Plaintiffs,<br><br>v.<br><br>DERN LUETARN,  LEAD FLASH, LLC, FURKAT KASIMOV, WEEKLYDEAL LLC, CASH RESERVES LLC,  & DOES 1-10, inclusive.<br><br>　　　Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1) Federal Trademark Infringement**<br><br>**2) Federal Unfair Competition**<br><br>**3) Federal Common Law Trademark Infringement & Unfair Competition**<br><br>**4) Federal Dilution by Tarnishment**<br><br>**5) Federal Cyber Squatting**<br><br>**6) Federal False Advertising**<br><br>**7) State Unfair Competition**<br><br>**8) State False Advertising**<br><br>**9) State Civil Conspiracy**<br><br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

## I. PLAINTIFFS' COMPLAINT

Plaintiffs BROOKWOOD FUNDING, LLC ("Brookwood"), BROOKWOOD LOANS OF CALIFORNIA ("Brookwood of California"), and INSTANT CASH LOANS ON CAR TITLES, INC. ("Instant Cash") (collectively, "Plaintiffs"), hereby file suit against Defendants DERN LUETARN, LEAD FLASH, LLC, FURKAT KASIMOV, WEEKLYDEAL LLC, CASH RESERVES LLC, and DOES 1 through 10, inclusive (collectively, "Defendants") and shows the Court the following in support thereof. All allegations herein are made upon information and belief, except those pertaining to Plaintiffs.

## II. INTRODUCTION

Brookwood has common-law and statutory rights in the "Brookwood" service mark and promotes consumer-lending services with that mark. Instant Cash, which is affiliated with Brookwood by common ownership and control, has common-law and statutory rights in the "Atlanta Title Loans" service mark and promotes title-loan services with that mark. Without Plaintiffs' permission or consent, Defendants have used the Brookwood and Atlanta Title Loans marks to promote consumer-lending services and title-loan services that are substantially similar to, and directly compete with, the services provided by Plaintiffs. In this manner, Defendants are stealing Plaintiffs' goodwill, confusing the consuming public, and damaging Plaintiffs' brands, all for their financial gain. This is an action to enjoin Defendants' unlawful conduct and recover damages for the same.

## III. PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Brookwood Funding, LLC is a limited liability company organized and existing under the laws of the State of Georgia. Brookwood's principal place of business is located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005. Brookwood owns the "Brookwood" service mark (the "Brookwood Mark") and performs certain management functions for a number of consumer-lending companies that are licensed to use the Brookwood Mark (the

"Brookwood Lenders"). Brookwood and the Brookwood Lenders are closely affiliated by common ownership and control.

2. Plaintiff Brookwood Loans of California, LLC is a limited liability company organized and existing under the laws of the state of Georgia and authorized to do business in California. Brookwood's principal place of business is located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005. Brookwood of California is the Brookwood Lender that operates in California.

3. Plaintiff Instant Cash Loans on Car Titles, Inc. ("Instant Cash") is a corporation organized and existing under the laws of the State of Georgia. Instant Cash's principal place of business is located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005. Instant Cash owns the "Atlanta Title Loans" service mark (the "Atlanta Title Loans Mark," and collectively with the Brookwood Mark, the "Marks") and licenses its use to a number of title-loan companies that are closely affiliated with Instant Cash by common ownership and control (the "Instant Cash Lenders," and collectively with the Brookwood Lenders, "Plaintiffs' Lenders").

4. Defendant Dern Luetarn ("Luetarn") is a natural person who resides in Bangkok, Thailand.

5. Luetarn may be served with process by delivery of a copy of the summons and this Complaint to 1421 Ladproa 37, R. Ladproa Samsennok, HuayKwang, Bangkok, Thailand.

6. Defendant Lead Flash LLC ("Lead Flash") is a limited liability company organized and existing under the laws of the State of Florida.

7. Lead Flash may be served with process by delivery of a copy of the summons and this Complaint to its registered agent Corporation Service Company, at 1201 Hays Street, Tallahassee, Florida 32301.

8. Defendant Furkat Kasimov is a natural person who resides in Sherman Oaks, California.

9. Kasimov may be served with process by delivery of a copy of the summons and this Complaint to 13636 Ventura Blvd, Ste. 181, Sherman Oaks, California 91423.

10. Defendant WeeklyDeal LLC ("Weekly Deal") is a limited liability company organized and existing under the laws of the State of Nevada.

11. Weekly Deal may be served with process by delivery of a copy of the summons and this Complaint to its registered agent United States Corporation Agents, Inc., at 500 N. Rainbow Blvd., Ste 300A, Las Vegas, Nevada 89107.

12. Weekly Deal's managing member is Defendant Kasimov.

13. Defendant Cash Reserves LLC ("Cash Reserves") is a limited liability company organized and existing under the laws of the State of Nevada.

14. Cash Reserves also does business as "www.loanautotitle.com."

15. Cash Reserves is registered to do business in the State of California.

16. Cash Reserves may be served with process by delivery of a copy of the summons and this Complaint to its registered agent Furkat Kasimov, at 13636 Ventura Blvd, Ste 181, Sherman Oaks, California 91423.

17. Cash Reserves' managing member is Defendant Kasimov.

18. Defendants Does 1-10 are those currently-unknown defendants who are acting in concert with Defendants to accomplish the acts described in this Complaint. Once identified through discovery, these persons and/or entities will be substituted in place of Does 1-10.

19. Defendants act in concert to collectively conduct lead-generation businesses that are substantially, systematically, and continuously operated out of the State of California.

20. Defendants' lead-generation businesses solicit California consumers and promote consumer-loan and title-loan services (collectively "Lending Services") in the State of California by, for example, displaying their advertisements in California and soliciting loan applications from California

1 consumers both online and through the telephone numbers on Defendants'
2 websites.
3     21.    Defendants conspired to wrongfully use and infringe the Marks by
4 including the Marks in the domain names, webpages, and metadata of various
5 websites they used to conduct their lead-generation businesses.
6     22.    Those websites are registered, owned, and/or operated by Defendants
7 for the purpose of attracting consumers located in the State of California.
8     23.    Plaintiffs have been damaged in the State of California because
9 Defendants have infringed the Marks to deceive California consumers into
10 believing that the Lending Services Defendants promote are, or are associated
11 with, Plaintiffs and Plaintiffs' Lenders.
12     24.    Defendants then refer leads they generate to lenders who originate
13 loans to consumers in California.
14     25.    This Court accordingly has personal jurisdiction over Defendants.
15     26.    This Court also has personal jurisdiction over Defendants because the
16 doctrine of pendent personal jurisdiction applies to the claims asserted in this
17 Complaint.
18     27.    This Court has subject matter jurisdiction over Plaintiffs' claims
19 under 28 U.S.C. §§ 1331 and 1338(a)-(b).
20     28.    Venue is proper in this judicial district under 28 U.S.C. § 1391.

### IV. FACTUAL BACKGROUND

**A.    Plaintiffs invest substantial resources to develop the Marks.**

*1.    The Brookwood Mark.*

29.    The Brookwood Mark encompasses the use of the word "Brookwood" in connection with consumer-lending services.

30.    The Brookwood Mark is inherently distinctive.

31.    Brookwood owns all right, title, and interest in the Brookwood Mark.

32. The Brookwood Mark is currently pending Federal Registration on the Principal Register.

33. Before Brookwood owned the Brookwood Mark, the mark was owned and consistently used by entities closely affiliated with Brookwood by common ownership and control (Brookwood's "Predecessors"). Brookwood's Predecessors offered the same consumer-lending services that Brookwood and the Brookwood Lenders currently offer.

34. Since at least November 2007, Brookwood and its Predecessors have spent significant time, money, and effort engaging in extensive advertising, marketing, and promotion of the Brookwood Mark and the services associated with the Brookwood Mark throughout the United States.

35. Brookwood has licensed the Brookwood Lenders to use the Brookwood Mark.

### 2. *The Atlanta Title Loans Mark.*

36. The Atlanta Title Loans Mark encompasses the use of the words "Atlanta Title Loans" in connection with title-loan services.

37. Instant Cash owns all right, title, and interest in the Atlanta Title Loans Mark.

38. Instant Cash has licensed the Instant Cash Lenders to use the Atlanta Title Loans Mark.

39. Since at least 1990, Instant Cash and the Instant Cash Lenders have spent significant time, money, and effort engaging in extensive advertising, marketing, and promotion of the Atlanta Title Loans Mark and the services associated with the Atlanta Title Loans Mark throughout the United States.

### 3. *The Marks are highly distinctive.*

40. Much of the Plaintiffs' advertising, marketing, and promotional efforts include the use of the Marks on the internet.

41. As a result of the foregoing advertising and promotional efforts, and the consistent high quality of the services marketed by the Marks, the Marks have acquired and now enjoy a high degree of distinctiveness and secondary meaning.

42. The Marks are now recognized by the consuming public generally, and Plaintiffs' and Plaintiffs' Lenders' customers specifically, as identifying exclusively the consumer and title Lending Services offered by Plaintiffs.

43. Plaintiffs and Plaintiffs' Lenders are the senior users of the Marks on the internet and in every state in which they conduct business.

**B.  Defendants' parasitic lead-generation business.**

44. Defendants Cash Reserves, Weekly Deal, and Lead Flash are in the business of generating "application leads" for consumer and title-loan lending companies that sign up to be part of Defendants' network.

45. Defendants Cash Reserves, Weekly Deal, and Lead Flash's lead-generation business works as follows:

   a. Defendants contract with lending companies (Defendants' "Lending Clients") interested in having Defendants send them potential customers.

   b. Defendants' Lending Clients agree to pay Defendants a fee when potential customers sent by Defendants become actual customers.

   c. Defendants own and operate a number of lead-generation websites that appear, on their face, to either offer title-loan services or match consumers with companies that provide title-loan services (Defendants' "Lead-Generation Websites").

   d. Defendants use these Lead-Generation Websites to generate potential clients for Defendants' Lending Clients.

   e. Defendants' Lead-Generation Websites include advertisements designed to induce consumers to apply for a loan on the Lead-Generation Websites.

   f. Once a consumer fills out an application on a Lead-Generation Website, the application is transmitted to one or more of Defendants' Lending Clients.

   g. If the consumer ends up taking out a loan from Defendants' Lending Client, Defendants' Lending Client pays Defendants a fee.

46. As a part of their lead-generating business, Defendants Cash Reserves, Weekly Deal, and Lead Flash hired Defendant Luetarn as their agent to create, operate, and/or promote Lead-Generation Websites.

47. Defendants Cash Reserves, Weekly Deal, and Lead Flash are responsible for the acts of their agent Defendant Luetarn because they expressly authorized his conduct.

48. Alternatively, Defendants Cash Reserves, Weekly Deal, and Lead Flash are responsible for the acts of their agent Defendant Luetarn because they impliedly authorized his conduct.

49. Alternatively, Defendants Cash Reserves, Weekly Deal, and Lead Flash are responsible for the acts of their agent Defendant Luetarn because they ratified his conduct.

**C.    Defendants unlawfully use the Marks to generate leads and turn a profit.**

50. In concert with Defendants Cash Reserves, Weekly Deal, and Lead Flash, Defendant Luetarn registered the Lead-Generation Website www.brookwood-loans.com.

51. The website www.brookwood-loans.com incorporates the Brookwood Mark in its domain name.

52. The website www.brookwood-loans.com incorporates the Brookwood Mark on various webpages of the website. True and correct copies of recent webpages from www.brookwood-loans.com are attached hereto as composite Exhibit 1.

53. Defendants have included the Brookwood Mark on various webpage of the website in order to increase the organic page rank of that site on Google and other search engines.

54. The website www.brookwood-loans.com incorporates the Brookwood Mark in its metadata.

55. Defendants have included the Brookwood Mark in metadata to increase the organic page rank of www.brookwood-loans.com on Google and other search engines.

56. The www.brookwood-loans.com website includes various terms and conditions that are nearly identical to those appearing on www.leadflash.com, which is owned, operated, or otherwise affiliated with Defendant Lead Flash.

57. When consumers visit the website www.brookwood-loans.com, they are lured into applying for and purchasing the consumer-lending services promoted by Defendants.

58. Defendants do not promote Brookwood's or the Brookwood Lenders' services, rather, Defendants promote the services of Brookwood and the Brookwood Lenders' competitors.

59. When consumers visit the website www.brookwood-loans.com, they are prompted to apply for a personal loan.

60. When completing the loan application, consumers must enter personal information such as their name, social security number, driver's license number, birthdate, and address.

61. Defendants sell this sensitive information to third parties without first disclosing the same to consumers, and also use this information for improper purposes.

62. The websites www.car-loansonline.com/atlanta-title-loans, www.car--financing.com/atlanta-title-loans, www.auto--titleloans.com/atlanta-title-loans ("Referring Websites") are also Lead Generating Websites used in Defendants' lead-generation business.

63. The Referring Websites incorporate the Atlanta Title Loans Mark in their domain name.

64. The Referring Websites incorporate the Atlanta Title Loans Mark in their metadata.

65. Defendants included the Atlanta Title Loans Mark in the metadata of the Referring Websites in order to increase the organic page rank of the Referring Websites on Google and other search engines.

66. When consumers search for "Atlanta Title Loans" on Yahoo, Bing, or other search engines, a search result page displays the Referring Websites within the first few pages of results.

67. On the results pages, the Referring Websites display underneath a banner stating "Atlanta Title Loans," which is highlighted for consumers with the use of stars and other eye-catching techniques. True and correct copies of recent search results pages displaying the Referring Websites are attached hereto as composite Exhibit 2.

68. Consumers are accordingly distracted, confused, and diverted from Plaintiffs' websites to the Referring Websites.

69. The Referring Websites directed consumers to the www.loanautotitle.com domain (collectively with the Referring Websites, the "Atlanta Websites").

70. Defendant Cash Reserves owns and operates www.loanautotitle.com.

9
COMPLAINT

71. Defendants collectively use www.loanautotitle.com as a Lead-Generating Website in their lead-generation business.

72. The Atlanta Websites prompt consumers to apply for and purchase title-loan services promoted by Cash Reserves.

73. When completing the loan application, consumers must enter personally-identifying information such as their name, social security number, driver's license number, birthdate, and address.

74. Defendants sell this sensitive information to third parties without first disclosing the same to consumers, and also use this information for improper purposes.

75. There is not anything on www.brookwood-loans.com or the Atlanta Websites (collectively the "Infringing Websites") to disabuse consumers of the notion that there is some relationship between Plaintiffs or Plaintiffs' Lenders on the one hand and Defendants on the other.

76. There is not anything on the Infringing Websites that makes clear to consumers that the Plaintiffs' and Plaintiffs' Lenders' services compete with the Lending Services promoted by Defendants through their lead-generation business.

77. As described in the foregoing paragraphs, Defendants have intentionally used the Marks to promote Lending Services that are not associated with Plaintiffs or Plaintiffs' Lenders.

78. Neither Plaintiffs nor Plaintiffs' Lenders have given Defendants permission to use the Marks in any manner.

79. By using the Marks in the manners described above, Defendants are capitalizing on the goodwill of the Marks to confuse consumers into mistakenly believing that Defendants promote Lending Services that are, or are associated or affiliated with, Plaintiffs or Plaintiffs' Lenders. In this manner, Defendants induce consumers to apply for loans through the Infringing Websites.

80. Neither Defendants nor the Lending Services they promote are, or are associated with, Plaintiffs or Plaintiffs' Lenders.

81. Defendants have financially benefited and reaped ill-gotten gains from their intentional, unauthorized use of the Marks.

82. Meanwhile, Plaintiffs and Plaintiffs' Lenders have been and will continue to be seriously damaged by Defendants' use of the Marks.

83. Unless enjoined by this Court, Defendants' actions will continue to cause irreparable injury to Plaintiffs, by, inter alia: (a) confusing and deceiving consumers into incorrectly believing that the Lending Services that Defendants promote are connected, approved, or otherwise associated with or sponsored by Plaintiffs or Plaintiffs' Lenders; (b) diverting consumers who would otherwise have purchased Plaintiffs' or Plaintiffs' Lenders' services to Defendants' website to purchase the Lending Services promoted by Defendants; (c) disrupting Plaintiffs' and Plaintiffs' Lenders' relationships with existing customers; (d) damaging the reputation of the Marks, Plaintiffs, and Plaintiffs' Lenders; (e) decreasing the capacity of the Marks to identify and distinguish quality Lending Services; and (f) causing Plaintiffs to lose customers and profits.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement

### (Lanham Act § 32, 15 U.S.C. § 1114)

84. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

85. The Marks are inherently distinctive and have acquired secondary meaning in the minds of Plaintiffs' and Plaintiffs' Lenders' existing and prospective customers, causing them to associate Lending Services bearing the Marks with Plaintiffs and Plaintiffs' Lenders.

86. Defendants have used, and will continue to use, the Marks in commerce in connection with the promotion of Lending Services.

87. In using the Marks as described herein, Defendants are deliberately and willfully capitalizing on the goodwill associated with the Marks to cause confusion or mistake about the origin of the Lending Services Defendants are promoting, to derive a benefit from Plaintiffs' and the Plaintiffs' Lenders' business and reputation, and to promote Lending Services in direct competition with Plaintiffs and Plaintiffs' Lenders in the same channels of trade and marketing that Plaintiffs and Plaintiffs' Lenders use to promote Lending Services.

88. In using the Marks as described herein, Defendants are also deliberately and willfully diverting consumers who would otherwise have purchased Plaintiffs and Plaintiffs' Lenders' Lending Services to purchase the Lending Services promoted on Defendants' websites.

89. Defendants' use of the Marks is causing and is likely to continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and the Lending Services they offer on the one hand with Plaintiffs and Plaintiffs' Lenders on the other.

90. Neither Plaintiffs nor Plaintiffs' Lenders have consented to Defendants' use of the Marks.

91. The services Defendants are promoting on their websites are in no way affiliated, connected, or associated with Plaintiffs and Plaintiffs' Lenders.

92. Through the foregoing conduct, Defendants are willfully and intentionally confusing the public. Therefore, Plaintiffs are entitled to a presumption that Defendants' use of the Marks is causing a likelihood of confusion.

93. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured, as described above.

94. Plaintiffs have no adequate remedy at law to prevent Defendants' wrongful conduct.

95. Unless enjoined by the Court, Defendants will continue to infringe the Marks and otherwise violate Plaintiffs' rights. Injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiffs.

## SECOND CAUSE OF ACTION

### Federal Unfair Competition

### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

96. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

97. Defendants' unlawful use of the Marks as described herein constitutes unfair competition under 15 U.S.C. 1125(a).

## THIRD CAUSE OF ACTION

### Federal Common Law Trademark Infringement & Unfair Competition

98. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

99. Defendants' unlawful use of the Marks as described herein constitutes federal common law trademark infringement and unfair competition.

## FOURTH CAUSE OF ACTION

### Federal Dilution by Tarnishment

### (Lanham Act § 43(c), 15 U.S.C. 1125(c))

100. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

101. The Marks are famous because they are widely recognized by the consuming public of the United States as a designation of source of the services promoted by the Marks.

102. After the Marks became famous, Defendants began using the Marks in commerce, in the manners described above.

103. In using the Marks, Defendants willfully intended to trade on the recognition of the Marks.

104. Defendants' use of the Marks is causing dilution of the Marks by blurring by impairing the distinctiveness of the Marks and lessening the capacity of the Marks to identify and distinguish Plaintiffs' and Plaintiffs' Lenders' services.

105. Defendants' use of the Marks is causing dilution of the marks by tarnishment by harming the reputation of the Marks.

106. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured, as described above.

107. Plaintiffs have no adequate remedy at law to prevent such dilution.

108. Unless enjoined by the Court, Defendants will continue to dilute the Marks. Injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiffs.

## FIFTH CAUSE OF ACTION
### Federal Cyber Squatting
### (Lanham Act § 43(d), 15 U.S.C. § 1125(d))

109. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

110. After the Marks became famous, Defendants registered and trafficked the Marks in the domain names and metadata of the Infringing Websites.

111. Defendants used the Marks to confuse consumers and generate leads for Lending Services through the Infringing Websites.

112. Defendants have bad-faith intent to profit from the use of the Marks in the domain names and metadata of the Infringing Websites.

113. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured, as described above.

114. Plaintiffs have no adequate remedy at law to prevent such cybersquatting.

115. Unless the Court orders the Infringing Websites forfeited, cancelled, or transferred to Plaintiffs, Defendants will continue to use the Infringing Websites to engage in cybersquatting. Injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiffs.

## SIXTH CAUSE OF ACTION

### Federal False Advertising

### (Lanham Act § 43(a), 15 U.S.C. § 1114)

116. Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

117. Defendants falsely and misleadingly used their domains to advertise that the Lending Services they promote are related to, sponsored by, or affiliated with Plaintiffs and Plaintiffs' Lenders.

118. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured.

119. Plaintiffs have no adequate remedy at law to prevent such false advertising.

120. Unless enjoined by the Court, Defendants will continue to promulgate false advertisements. Injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiffs.

## SEVENTH CAUSE OF ACTION

### State Unfair Competition

### (Bus. & Prof. Code § 17200 & Common Law)

121. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

122. The foregoing acts of Defendants constitute unfair and unlawful competition under California Business and Professions Code § 17200, *et seq.* and the common law of the State of California.

123. Defendants have received, and will continue to receive, gains, profits, and advantages from their unfair and unlawful competition. By reason of Defendants' wrongful acts, Plaintiffs have been damaged and are entitled to monetary relief.

124. Unless enjoined by the Court, Defendants will continue to engage in unfair competition with Plaintiffs. Injunctive relief is therefore required to prevent Defendants' continued conduct and to ameliorate and mitigate the injury to Plaintiffs.

## EIGTH CAUSE OF ACTION

### State False Advertising

### (Bus. & Prof. Code § 17500)

125. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

126. Defendants falsely and misleadingly used the Infringing Websites to advertise that the Lending Services they promote are related to, sponsored by, or affiliated with Plaintiffs and Plaintiffs' Lenders.

127. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured.

128. Plaintiffs have no adequate remedy at law to prevent such false advertising.

129. Unless enjoined by the Court, Defendants will continue to promulgate false advertisements. Injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiffs.

## NINTH CAUSE OF ACTION

### Civil Conspiracy

### (State Common Law)

130. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

131. Defendants agreed, as to each overt act described herein in furtherance of the conspiracy and enterprise, to use the Marks in the domain names, webpages, and metadata of the Infringing Websites.

132. Defendants had the common purpose of using the Marks to confuse consumers and generate leads for Lending Services through the Infringing Websites.

133. Defendants deliberately used the Infringing Websites to falsely advertise that the Lending Services they promote are related to, sponsored by, or affiliated with Plaintiffs and Plaintiffs' Lenders.

134. As a direct and proximate result of Defendants' overt, concerted, and conspiratorial actions, Plaintiffs have suffered significant damages.

135. As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiffs have been, and are likely to continue to be, substantially injured.

136. Unless enjoined by the Court, Defendants will continue to damage Plaintiffs through their conspiracy. Injunctive relief is therefore required to prevent, ameliorate, and mitigate the injury to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

a) Enter judgment in favor of Plaintiffs and against Defendants on the counts above;

b) Order Defendants to pay punitive damages and compensate Plaintiffs in the amount of three times Plaintiffs' actual damages, in accordance with 15 U.S.C. §1117(a);

c) Order Defendants to account for and disgorge the profits derived from their unlawful acts, in accordance with 15 U.S.C. §1117(a);

d) Order Defendants to reimburse Plaintiffs for the attorneys' fees, expenses, and costs Plaintiffs incur pursuing their claims, in accordance with federal and California law, including without limitation 15 U.S.C. §§ 1117(a);

e) Issue a preliminary and, ultimately, a permanent injunction prohibiting Defendants, pursuant to Fed. R. Civ. P. 65, 15 U.S.C. § 1116, and/or other applicable law, from using the Marks or otherwise attempting to solicit, divert, take away or attempt to divert or take away any existing customers of Plaintiffs and Plaintiffs' Lenders;

f) Order Defendants to file with the Court and serve on Plaintiffs a sworn written report setting forth in detail the manner and form in which Defendants have complied with the injunction issued by this Court, pursuant to 15 U.S.C. § 1116;

g) Grant Plaintiffs prejudgment interest on the amounts awarded; and

h) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all triable issues of fact.

Dated: September 29, 2014           WARGO & FRENCH LLP

By: */s/ Kristapor Vartanian*

KRISTAPOR VARTANIAN
MARK L. BLOCK
Attorneys for Plaintiffs
BROOKWOOD FUNDING, LLC,
BROOKWOOD LOANS OF CALIFORNIA, LLC, AND INSTANT CASH LOANS ON CAR TITLES, INC.

Law Offices
**Wargo & French LLP**
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
Phone: 310-853-6300